**In re Alan and Marlene MOSKOWITZ, Debtors.**

**Debtors No. 81 B 20189.**
**Adv. No. 81–6071.**

United States Bankruptcy Court,
S. D. New York.

Dec. 8, 1981.

trustee for having to commence and continue an action for a preference against New York Hospital for payments received from the Associated Hospital Service of New York (Blue Cross) on behalf of the debtor, Arlene Moskowitz. New York Hospital (NYH) did not properly respond to the trustee's subpoena for the production of the debtor's and New York Hospital's contracts with Blue Cross and for the assignments to NYH of the debtor's right to receive Blue Cross coverage for hospitalization. NYH did not fully produce these documents until it successfully moved for summary judgment, on the theory that the debtor had no right to receive the medical insurance proceeds directly and that there was no preference because there was no diminution of the debtor's estate. The trustee argues that if NYH had timely produced these documents in response to his subpoena he would not have wasted time and expense commencing and continuing the preference action.

## DEBTOR'S AND NYH'S CONTRACTS WITH BLUE CROSS

NYH contends that even if these documents were covered by the trustee's subpoena, which they dispute, they should not be charged with costs for the delay in producing them because these documents were not contained in their files. Thus the question is whether NYH should be required to obtain documents from Blue Cross (a third party) in order to respond to the trustee's subpoena.

Sidney Turner, White Plains, N. Y., Trustee.

Kelley, Drye & Warren, New York City, for defendant; Robert A. Horowitz, New York City, of counsel.

**HOWARD SCHWARTZBERG, Bankruptcy Judge.**

The trustee in bankruptcy seeks counsel fees in his capacity as attorney for the

It is well settled that a person cannot be compelled to produce pursuant to a subpoena a document which is neither in his possession nor under his control. *In re National Public Utility Investing Corp.*, 79 F.2d 302 (2d Cir. 1935); *In re Rivera*, 79 F.Supp. 510, 511 (S.D.N.Y.1948); *U.S. v. International Business Machine Corp.*, 71 F.R.D. 88 (S.D.N.Y.1976). Therefore, there is no basis for awarding costs to the trustee with respect to the contracts in question.

## THE ASSIGNMENTS COVERING THE DEBTOR'S MEDICAL BENEFITS

The key issue with regard to the Assignments is whether defendant NYH should have produced them in response to the trustee's July 22, 1981 subpoena, instead of annexing them as exhibits to the motion for summary judgment filed on September 8, 1981.

In a previous decision involving the same parties, *In re Moskowitz*, 14 B.R. 677, 5 C.B.C.2d 269 (Bkrtcy.S.D.N.Y.1981), the court addressed the issue of the delayed production of the assignments, stating that

"No documents were supplied pursuant to the subpoena to indicate that the debtors had assigned medical insurance proceeds to the defendant. However, in defendant's Reply Affidavit filed September 25, 1981, Mr. Ted Meroe, the Assistant Comptroller of New York Hospital explained that

[i]t was my understanding that because the Assignment does not make any express reference to Blue Cross and because New York Hospital receives payments directly from Blue Cross, the Assignment was not a document 'involving Blue Cross.' Accordingly, although I realized that the Assignment encompassed payments by Blue Cross to New York Hospital, I did not believe that production of the Assignment was required by the subpoena.

Notwithstanding Mr. Meroe's explanation, it is clear that the trustee's subpoena called for documents that 'may effect [sic] *the debtors, the defendant or Blue Cross.'* [Emphasis added]. Surely the Assignments would affect the debtors and the defendant even if, assuming arguendo, they did not involve Blue Cross. Manifestly, these documents should have been submitted on the return date of the subpoena, July 22, 1981. The two Assignments in question were filed with the clerk of this court on September 8, 1981 as Exhibits B and C of defendant's Affidavit sworn to by Mr. Harold P. Hogstrom, Comptroller of New York Hospital. Indeed, if the Assignments had been produced when first requested much time and energy of this court and the attorneys involved could have been spared. Moreover, the August 21, 1981 opinion of this court, *In re Moskowitz*, [13 B.R. 357] 7 B.C.D. 1314 ([Bkrtcy.] S.D.N.Y.1981) could have dealt more definitively with the issues concerning the Assignments . . . . If evidence as to the assignment had been forthcoming at the August 19, 1981 hearing, this court would have ruled that the insurance proceeds did not constitute property of the estate, and that Blue Cross payments to New York Hospital did not involve a transfer of property of the debtor, negating a theory of voidable preference."

The language of the subpoena calls for "all documents, records, releases, memorandums [sic], correspondence, assignments, contracts, bill, [sic] receipts, <u>with debtor and Blue Cross</u> with respect to and or may effect [sic] the debtors, the defendant or Blue Cross." [Emphasis added]

Defendant now asserts that the above underlined phrase "with debtor and Blue Cross" limits the phrase beginning with "all documents", and concludes "[t]hus, only those documents *involving the debtors and Blue Cross* were required to be produced in response to plaintiff's subpoena." [Defendant's Affidavit in Opposition, p. 7; Emphasis added].

Moreover, defendant argues that since the medical insurance contract between Blue Cross and debtor indicates that insurance payments for services rendered to debtor are to be paid directly to New York Hospital, "the Assignments did not involve Blue Cross because the debtors did not have any rights to payments from Blue Cross which they could have assigned to New York Hospital." [Defendant's Affidavit in Opposition, p. 8]

Assuming arguendo that the grammatical interpretation of trustee's subpoena is correct, it is difficult to understand how an assignment executed by the debtor does not involve the debtor. Furthermore, until there was a clarification as to the terms of

debtor's medical plan with Blue Cross, it is evident that the Assignment concerned Blue Cross in its capacity as an insurance carrier. The language of the Assignment states clearly:

"I hereby assign, transfer, and set over to the above named medical facility sufficient monies and/or benefits *to which I may be entitled from governmental agencies, insurance carriers, or others* who are financially liable for my hospitalization and medical care to cover the costs of the care and treatment to myself or my dependent in said hospital . . . . "

It was not until debtor's medical plan with Blue Cross was submitted on September 25, 1981 in connection with the defendant's motion for summary judgment that the court determined that debtor was not entitled to be paid directly by Blue Cross for hospital services rendered. Therefore, at the time the Assignments were requested pursuant to the trustee's July 22 subpoena, it was premature for NYH to conclude that "the Assignments did not involve Blue Cross" on a theory that the debtors had no rights to payments under the terms of their medical insurance plan which they could assign in favor of NYH.

The Assignments were submitted on September 8, 1981 in connection with defendant's motion for summary judgment. Defendant contends that trustee incurred no unnecessary expense because contrary to his claim that he would have withdrawn his complaint had the Assignments been submitted on the return date of the subpoena, he then opposed NYH's motion arguing that the Assignments were defectively executed and vague. Therefore, defendant reasons that since the trustee continued to pursue his claim even after receiving the Assignments, "there is no basis for concluding that plaintiff devoted unnecessary time to this proceeding because New York Hospital had not produced the Assignments earlier." [Defendant's Affidavit in Opposition, p. 3]

This argument is without merit. The trustee was under no obligation to simply drop his complaint once he received delivery of the Assignments. The trustee had the right to alternatively plead his case, first alleging non-compliance with his subpoena, then attacking the validity of the Assignments once he received them.

Manifestly, the defendant, NYH, gained nothing from the delay in procuring the Assignments since NYH obviously had no motive to conceal the existence of documents which ultimately required the dismissal of the trustee's claim. The defendant's failure to produce the Assignments was due to a mistaken unilateral determination as to the scope of the subpoena, almost bordering on arrogance. The trustee's position was regarded with such disdain that NYH's counsel believed it was unnecessary to roll out the heavy artillery when they might frighten him off with a pistol. NYH's original motion to dismiss the trustee's claim revealed that the pistol was not loaded. Therefore, the required documents had to be produced for NYH's motion for summary judgment. While NYH's counsel might be faulted for legal blundering, this court would be hard pressed to find that they acted in bad faith.

Rule 37 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 737, deals with the failure to obey a court order for discovery. This Rule is inapplicable because no court order was involved. The failure to comply with a subpoena is punishable by contempt, as reflected under Bankruptcy Rule 920. Additionally, sanctions are prescribed under paragraphs (A), (B), and (C) of Rule 37(b)(2). See *In re Visioneering Construction*, 661 F.2d 119 (9 Cir. 1981).

Reference must therefore be made to Bankruptcy Rule 754(b) in considering the basis for taxing counsel fees as costs. The trustee in this case was not the prevailing party. However, unlike Rule 54(d) of the Federal Rules of Civil Procedure, Bankruptcy Rule 754(b) does not expressly provide that only the prevailing party is entitled to an award of costs. Since costs are determined in the court's discretion, one need not be the prevailing party in order to be awarded costs. See *In re Miller*, 14 B.R. 443 (Bkrtcy.E.D.N.Y.1981).

As to attorneys' fees, there is no express authority under the Bankruptcy Code or Rules for such fees. An attorney may be personally liable for excess costs, including attorneys' fees reasonably incurred if the attorney "multiplies the proceedings in any case unreasonably and vexatiously . . . ." 28 U.S.C. § 1927, as amended by Public Law 96–349, § 3, 94 Stat. 1156. Prior to the amendment on September 12, 1980 it was settled law that attorneys' fees were not included as costs under this section, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). The trustee in bankruptcy does not seek attorneys' fees directly from NYH's counsel, nor are such fees appropriate in this case.

Therefore, the basis for awarding attorneys' fees here must be found, if at all, under Bankruptcy Rule 754(b). As a court of equity the bankruptcy court is guided by equitable doctrines and may award attorneys' fees where the circumstances warrant the exercise of such authority. *In re Swofford*, 112 F.Supp. 893 (D.Minn.1952). However, attorneys' fees are awardable as costs under Bankruptcy Rule 754(b) only in bankruptcy proceedings when a party acted contemptuously or in bad faith. See *In re Miller*, supra, and cases cited. Since it cannot be concluded that NYH acted contemptuously or in bad faith in relying upon counsels' erroneous interpretation of the scope of the trustee's subpoena, it follows that NYH should not be compelled to pay attorneys' fees to the trustee who acted as his own attorney. The additional legal time will have to be borne by the bankruptcy estate. All applications for attorneys' fees in connection with these adversary proceedings are denied.

IT IS SO ORDERED.